H. J. VOLLMER and Another v. BIG STONE COUNTY BANK.[1]

November 20, 1914.

Nos. 18,773—(64).

**Order on stakeholder — evidence of agreement — priority of claims.**

Action to recover on a written order given plaintiffs by a debtor to pay the amount thereof out of the proceeds of an auction sale of the debtor's property, which sale was to be held in the future and to be conducted by defendant bank. It is *held*:

(1) The evidence shows an agreement by defendant, made when the order was presented, to pay the same out of the proceeds of the sale after the claims which the debtor, prior to the presentation of plaintiff's order, had ordered defendant to pay.

(2) The evidence was sufficient to support a finding by the jury that plaintiff's order was presented before certain other claims were ordered by the debtor to be paid.

(3) Defendant, as a stakeholder, was not responsible for the validity of the claims it was ordered to pay. The evidence was insufficient to show that

1 Reported in 149 N. W. 545.

defendant knew that certain claims were fictitious, and fraudulently conspired with their owners to dissipate the proceeds of the sale so as to prevent the payment of plaintiff's order. It was error to submit this question to the jury.

(4) It was error to instruct the jury that if such claims were fictitious, *"in whole or in part,"* to the knowledge of defendant, plaintiffs could recover the full amount of their claim.

(5) The owners of the claims, the priority and validity of which are in controversy, should be made parties to this litigation.

(6) Plaintiffs are the real parties in interest.

Action in the district court for Big Stone county against A. D. O'Brien and the Big Stone County Bank to recover $600 upon the order which appears at the beginning of the opinion. The defense is stated in the opinion. The case was tried before Flaherty, J., who at the close of plaintiff's case denied defendants' motions to dismiss the action, and a jury which returned a verdict for $606.32 in favor of plaintiffs. From an order denying its motion for a new trial, defendant bank appealed. Reversed and new trial granted.

*Cliff & Purcell,* for appellant.

*F. W. Murphy,* for respondents.

BUNN, J.

This action is to recover the sum of $600 and interest on the following written order:

"Graceville, Oct. 2, 1912.

"Mr. A. D. O'Brien,

"Cashier Big Stone County Bank, Graceville.

"Please pay to H. J. Vollmer & Co. Six Hundred Dollars out of proceeds of my sale of personal property to be held on Oct. 16th, 1912.

"Wm. Thompson."

The complaint alleged that the order was presented by plaintiffs to defendants on October 2, and accepted by them, but not paid. The case was tried to a jury, and the result was a verdict against defendant bank and in favor of plaintiffs in the full amount of their claim,

the case having been dismissed as to defendant O'Brien. Defendant bank appealed from an order denying its motion for a new trial.

The assignments of error call in question the sufficiency of the evidence to sustain the verdict, and certain instructions of the trial court.

The facts, including those which are admitted and those which, though in controversy, the evidence tends to prove, are as follows:

William Thompson, a farmer near Graceville, concluded to quit farming and sell his stock and machinery at auction. He was heavily in debt. He applied to defendant bank to take charge of the auction sale, or, as called in the evidence, to "clerk the sale." This included advertising, employing an auctioneer, receiving the cash realized and passing upon and discounting paper received where cash was not paid. For its services the bank was to receive an agreed commission. It appears that the bank was to pay, out of the proceeds of the sale, certain claims against Thompson. Defendants claimed, and there was testimony tending to show that, on October 1, a list of Thompson's creditors was made, and that Thompson orally directed the bank to pay the claims of these creditors out of the proceeds of the sale. The claims on this list aggregated $1,273.37, including the estimated expenses of the sale, and including a claim of James Fleming for $194, and one of Ignace Windorpski for $354.25. The two claims last mentioned formed the basis of controversy on the trial and will be considered later. Thompson was indebted to plaintiffs in the sum of $327.45, and to McRae & Sons and the First National Bank of Graceville in the sum of $255.84. Neither of these claims was on the list claimed to have been furnished the bank by Thompson October 1. On October 2, Thompson gave plaintiffs the order on which the action is brought. The amount was made up of the claims of plaintiffs, McRae and the First National Bank; this was for convenience, there being no assignment to plaintiffs by McRae or the bank; the difference between the amount of the order and the indebtedness was to be returned to Thompson when the order was paid. The order was presented to the bank by plaintiff H. J. Vollmer on October 3, at about 10 a. m. He testified in substance that he was then told by the cashier and assistant cashier of defendant that there were two claims aggregating some $600 against the expected fund which were ahead of

plaintiffs; these two claims, which were mentioned by name, were stated to be all the claims against the fund, and plaintiffs were told that their order would come in next after the payment of these claims and the expenses of the sale, and would be paid. The order was left with the bank and retained by it. Vollmer testified that he called at the bank a week later, when the probable amount to be realized from the sale was figured by him and the assistant cashier at between $1,-600 and $1,700, and when it was again stated by the latter that there was approximately $600 against the fund, ahead of plaintiff's order. Vollmer testified quite positively that nothing was said about any other claims.

The chief witness for defendant was its assistant cashier, who testified to the making up of the list of Thompson's creditors on October 1, and to a verbal order from Thompson to pay these creditors out of the sale proceeds. The witness admitted the presentation of plaintiff's order on October 3, but denied that he agreed to pay it next after the two claims mentioned. His testimony on this point was in effect that he told Vollmer that two mortgages aggregating $600 were prior claims, and that there were other prior claims beside the mortgages. He did not tell Vollmer the amount of these claims, and testified that Vollmer did not inquire the amount, but simply left the order, with the understanding that it would be paid after the claims that were prior.

1. It is apparent, we think, from the evidence as outlined above, that the agreement was that plaintiff's order was to be paid out of the proceeds of the sale after the claims that Thompson had, prior to its presentation, ordered the bank to pay.

2. Therefore the chief question for the trial court and the jury was as to what claims Thompson, before plaintiff's order was presented, had ordered the bank to pay out of the proceeds of the sale. This issue was tendered by the answer, defendants alleging that the property brought $1,400 above expenses at the sale, and that out of this they paid incumbrances on the property and "other claims in accordance with the orders and instructions which said Thompson made prior to the date of the claimed order of plaintiffs," leaving a balance of $177.44, which they had offered to pay to plaintiffs.

The two claims around which the controversy settled were, as stated before, one of Windorpski for $354.25, and one of Fleming for $194. Windorpski was the owner of the farm that Thompson occupied. The claim was for "plowing back" which the tenant had agreed to do, and had not done, and for the landlord's share of certain barley which the tenant had failed to cut. It was represented by a written order dated October 1, 1912, directing the bank to pay the claim out of the proceeds of the sale. The testimony of the assistant cashier, as before noted, was that Thompson, on October 1, verbally directed this and the Fleming claims to be paid. The written order was not given to Windorpski, but seems to have been made on the bank's suggestion and delivered to it by Thompson. Later, and while the order was still unpaid, Windorpski paid Thompson $200 for wheat purchased of him.

The Fleming claim was ostensibly for services of Fleming in cutting and threshing grain for Thompson. The order was dated October 5. Fleming was related to Thompson by marriage. The services had been performed for Thompson a year before the order was given, but no claim had been made for payment. Both Windorpski and Fleming, as well as the other creditors on the list claimed to have been made up October 1, were customers of the defendant bank, and its cashier was active in protecting them.

On the question of priority of presentation as between the claims of Windorpski and Fleming and the order of plaintiffs, an examination of the entire record satisfies us that the issue was for the jury and that it was properly submitted by the trial court. The jury was not bound to believe the testimony of interested witnesses as to the verbal orders claimed to have been given by Thompson on October 1, and we are unable to say that the verdict is not sufficiently supported by the evidence on this point.

3. The trial court submitted another question to the jury, and defendant strenuously insists that it erred in so doing. This was the question whether the claims of Windorpski and Fleming were *bona fide*, or fictitious claims. After fully and correctly instructing the jury on the issue of priority, the court charged that, if the jury should find from the evidence that some of the claims were merely colorable

or fictitious claims, and were known by defendant to be such, then such claims would not take precedence over the claim of plaintiffs. The court then called attention to the Fleming and Windorpski claims, and said in substance that if these claims were fictitious, and so known to be by the bank, if they were "fabrications, subterfuges, fictitious arrangements, and were not based on a valid indebtedness in whole or in part," the claim of plaintiffs would take precedence over them.

Defendant complains of the submission of this issue to the jury on several grounds: That fraud was not pleaded in the complaint; that the evidence showed that the claims were valid; that, though it be conceded that Thompson did not owe Windorpski and Fleming, yet this was no concern of the bank, as stakeholder, if it was ordered by Thompson to pay the claims.

The trial court realized that there were difficulties in the case, and we have found this true. We have no trouble on the question of pleading, and we might be able to hold that the evidence cast doubt enough on the validity and *bona fides* of the Fleming and Windorpski claims to justify a finding that they were in part at least fictitious. The chief trouble comes in holding defendant responsible for the validity of these claims. If the evidence showed that the claims were wholly fictitious, that defendant knew it and conspired with the creditors to dissipate the proceeds of the sale so that there would not be enough to pay plaintiffs, it might well be said that plaintiffs should have a remedy for this wrong. But it cannot be doubted that, if defendant did not participate in the fraud, but acted merely as a stakeholder to receive the sale proceeds and pay them out according to the directions of Thompson, it would not be responsible though Thompson should order it to pay fictitious claims, or gratuities. The evidence is not free from suggestions that defendant was not wholly impartial in its attitude towards the different claimants. It was diligent in seeing that creditors of Thompson who happened to be customers of itself presented their claims, while it was not over zealous in protecting creditors like plaintiffs who were not its customers. But we are unable to find any satisfactory evidence that defendant knew that Fleming and Windorpski had no claims, and conspired with them to

prevent plaintiffs from receiving payment. Mere knowledge on defendant's part that the claims were in whole or in part invalid would not be sufficient. It was necessary to have evidence of bad faith on defendant's part, actual participation in a scheme to use up the fund by the payment of fictitious claims so as to defeat plaintiffs. We are obliged to hold that the evidence fell short of connecting defendant with the fraud, if any, and that the trial court should not have submitted this issue to the jury.

4. The trial court charged that if the Windorpski and Fleming claims were fictitious *"in whole or in part"* to the knowledge of defendant, plaintiffs could recover the full amount of their order. This was error. Plainly if these claims were simply padded, but were *bona fide* and valid claims in part, and prior to plaintiffs', it cannot be said that they are entirely out of the way.

5. We think that Windorpski and Fleming should be made parties to this action. · If the evidence on another trial should not be materially different, the issue would be simply the question of priority of presentation as between plaintiff's order, and the oral or written orders to pay Windorpski and Fleming. And one of these claims might be found to be prior to plaintiffs' and the other subsequent.

6. Defendant's claim that plaintiffs are not the real parties in interest so far as concerns that part of the order which represented the claims of the First National Bank and McRae & Son is not sustained.

Order reversed and new trial granted.